Clerk's Office
Filed Date:  9/28/2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Z.A.R., mother and natural guardian of E.J., and
Z.A.R., individually,

                    Plaintiffs,

    -against-

THE CITY OF NEW YORK, and NEW YORK CITY
DEPARTMENT OF EDUCATION,

                    Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
19-cv-2615 (CBA) (PK)

**AMON, United States District Judge:**

    Plaintiff Z.A.R. brings this action individually and on behalf of her child E.J. against Defendants the City of New York and New York City Department of Education (the "DOE"), (collectively, "Defendants"), pursuant to the Individuals with Disabilities Education Act ("IDEA"). Plaintiff seeks review and reversal of a final administrative decision by a New York State Review Officer ("SRO") denying her tuition reimbursement for the 2017-2018 school year following E.J.'s unilateral placement at a private school, the Summit School. The parties cross-moved for summary judgment. I referred the motions to the Honorable Peggy Kuo, United States Magistrate Judge, for report and recommendation. Magistrate Judge Kuo issued a thorough report and recommendation on February 26, 2021 (the "R&R"), granting Plaintiff's motion and denying Defendants' motion. (ECF Docket Entry ("D.E.") # 46 ("R&R").)

    For the reasons set forth below, I adopt Magistrate Judge Kuo's recommendation in part. Although I agree with most of Magistrate Judge Kuo's analysis, I have determined that certain of Defendants' objections to the R&R's weighing of the equities are well founded. Specifically, I conclude that Plaintiff's uncooperative behavior contributed to the denial of the free appropriate public education ("FAPE") required by the IDEA and, as such, Plaintiff should not be awarded full tuition reimbursement for the 2017-2018 school year. Rather, Plaintiff's tuition

1

reimbursement award should be reduced by 50%. Accordingly, Plaintiff's motion is granted in part and denied in part, and Defendants' motion is granted in part and denied in part.[1]

## BACKGROUND

### I.    Legal Framework

As the R&R correctly stated:

> Under the IDEA, qualifying disabled students are entitled, each year, to free appropriate public education ("FAPE") that conforms to a tailored education plan designed for their particular needs. The education plan, called an Individualized Education Program ("IEP"), must be developed annually by a Committee on Special Education ("CSE")—a committee comprising at least "the student's parent(s), a representative of the school district, a special education provider, a general education teacher if the student is being considered for a general education environment, and any other individual with special knowledge or expertise concerning the child." In New York, decisions made by CSEs can be appealed to an Impartial Hearing Officer ("IHO"), and decisions made by IHOs can, in turn, be appealed to a State Review Officer ("SRO").

(R&R 2 (quoting J.L., 2016 WL 6902137, at *1).)

If parents disagree with the CSE's recommendation, they may appeal the decision and unilaterally choose to enroll their child in a different school program while the appeal is pending. J.L., 2016 WL 6902137, at *1. If parents pursue this route and place their child in a private program, their tuition may still be reimbursed if they can demonstrate the three components of what is known as the Burlington-Carter test: "(1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement is appropriate to meet the child's needs, and (3) equitable considerations favor

---

[1] Though styled as cross-motions for summary judgment, "district courts reviewing administrative decisions under the IDEA are 'not dealing with summary judgment in its traditional setting.' Pursuant to the statute, the court is to 'receive the records of the administrative proceedings; . . . hear additional evidence at the request of a party; and[,] basing its decision on the preponderance of the evidence, . . . grant such relief as the court determines is appropriate.'" J.L. v. N.Y.C. Dep't of Educ., No. 15-cv-1200 (CBA) (RER), 2016 WL 6902137, at *4 (E.D.N.Y. Nov. 22, 2016) (alterations in original) (citations omitted) (first quoting Wall ex rel. Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y 1996); and then quoting 20 U.S.C. § 1415(i)(2)(C)). The thrust of the parties' cross-motions here concerns the question of whether Plaintiff is entitled to tuition reimbursement.

2

reimbursement." E.M. v. N.Y.C. Dep't of Educ., 758 F.3d 442, 451 (2d Cir. 2014); see also Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 369 (1985); Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 15-16 (1993).

## II.    **Factual and Procedural History**

The factual background is thoroughly stated in the R&R, and familiarity with the facts of these proceedings is presumed. I recount only the facts necessary to discuss the objections raised.

E.J. has attended the Summit School, a New York-state approved non-public school, since the 2016-2017 school year. (R&R 3.) On June 20, 2017, a CSE meeting was held to develop E.J.'s IEP for the 2017-2018 school year. (Id. at 6.) Although the Summit School's clinical director attended this meeting by phone, neither Plaintiff nor E.J.'s Summit School teachers were in attendance. (Id. at 6-7.) The IEP developed at the June 20, 2017 meeting recommended that E.J. be placed in a general classroom setting with periods of "integrated co-teaching" ("ICT") services, ten times a week for English Arts and five times a week for math, social studies, and science, along with additional support services. (D.E. # 42 ¶ 10.)

On August 22, 2017, Plaintiff submitted a "Ten-Day Notice" to DOE, informing it that the IEP developed at the June 20, 2017 meeting denied E.J. a FAPE and, as a result, that she would unilaterally place E.J. in the Summit School for the 2017-2018 school year. (R&R 9.) Plaintiff then unilaterally enrolled E.J. at the Summit School on September 7, 2017. (Id.)

On November 9, 2017, Plaintiff sent, via her attorney, an impartial hearing complaint to the DOE. (D.E. # 18-1 ("Administrative Record" or "AR") at 629-31.) Over eight hearings, the IHO heard arguments and testimony from both Plaintiff's and Defendants' witnesses. (Id. at 46.) In a decision dated June 7, 2018, the IHO denied Plaintiff's request for tuition funding. (Id. at 57.) The IHO concluded that: (i) the IEP for the 2017-2018 school year was not appropriate for E.J.

3

and denied E.J. a FAPE; (ii) the evidence did not support finding that the Summit School program was appropriate for E.J.; and (iii) equitable considerations weighed against tuition reimbursement because Plaintiff "did not cooperate in having the Student evaluated, which hampered the development of an appropriate IEP."[2] (Id. at 57.)

Both parties appealed to the SRO. Plaintiff challenged the IHO's finding that the Summit School was not appropriate and that equitable considerations did not favor her, while Defendants challenged the IHO's determination that they failed to provide a FAPE for E.J. (Id. at 6, 11.) The SRO concluded that: (i) E.J. was denied a FAPE for the 2017-2018 school year because of the substantive deficiencies in the IEP, (id. at 34); (ii) contrary to the IHO's determination, the Summit School offered an appropriate placement for E.J., (id. at 41); but that (iii) the equitable considerations did not weigh in favor of tuition reimbursement, (id. at 42).

On May 3, 2019, Plaintiff appealed the decision of the SRO to this Court. After reviewing both parties' moving papers, Magistrate Judge Kuo recommended displacing the SRO's conclusion and awarding the Plaintiff full tuition reimbursement. (R&R 36.) First, the R&R concluded that E.J. was denied a FAPE because there were both procedural, (id. at 25), and substantive deficiencies, (id. at 28). Second, the R&R deferred to the SRO's decision that the Summit School was an appropriate placement. (Id. at 31.) Finally, as to the equities analysis, the R&R departed from the conclusions reached by the IHO and SRO. The R&R accepted the SRO's conclusion that Plaintiff was unreasonably uncooperative in refusing to consent to the DOE's request for a revaluation of E.J. (Id. at 33.) The R&R also acknowledged that Plaintiff's communications with DOE were inconsistent and contradictory. (Id. at 33-34.) However, the

---

[2] The IHO additionally noted that the balance of equities did not favor Plaintiff because she did not indicate that she did not participate or have notice of the IEP in her ten-day notice letter, which gave the DOE notice of Plaintiff's unilateral placement of E.J. in the Summit School. (AR 57; see also D.E. # 17-1.)

R&R determined that "although Plaintiff was uncooperative, the procedural and substantive inadequacies in E.J.'s IEP were not the result of her uncooperativeness, but rather can be traced to the DOE's actions, i.e., its failure to provide adequate notice of the CSE meeting to Plaintiff and the Summit School, and its refusal to postpone the June 20, 2017 CSE meeting." (Id. at 35-36.) Accordingly, the R&R concluded that "the equities do not weigh against Plaintiff's request for tuition reimbursement, and that Plaintiff be granted full tuition reimbursement." (Id. at 36.)

Defendants lodged timely objections to the R&R, (D.E. # 49 ("Defs.' Objections")), and Plaintiff filed a brief in response to the objections, (D.E. # 50).

## STANDARDS OF REVIEW

### I.   Reviewing a Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review. Id.; see also United States v. Romano, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. John Hancock Life Ins. Co. v. Neuman, No. 15-cv-1358 (KAM) (RML), 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).

### II.   Review of State IDEA Tuition Reimbursement Decisions

Pursuant to statute, the court is to "receive the records of the administrative proceedings," "hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence, . . . grant such relief as the court determines is appropriate."   20 U.S.C.

§ 1415(i)(2)(C). A federal court's review of "state educational decisions under the IDEA is 'circumscribed.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007) (quoting Muller v Comm. on Special Educ., 145 F.3d 95, 101 (2d Cir. 1998)). "[F]ederal courts reviewing administrative decisions must give 'due weight' to [state] proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Id. at 113 (second alteration in original) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 208 (1982)). Nevertheless, the degree of deference to state authorities "will vary based on the type of determination at issue." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012). For example, "determinations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether the IEP was developed according to the proper procedures." Id. Additionally, "the district court should afford more deference when its review is based entirely on the same evidence as that before the SRO than when the district court has before it additional evidence that was not considered by the state agency." Id.

Along this spectrum, district courts in this Circuit have determined that state agency conclusions on the equities analysis are entitled to less deference. See, e.g., W.M. v. Lakeland Cent. Sch. Dist., 783 F. Supp. 2d 497, 504 (S.D.N.Y. 2011) ("[D]eference is less weighty here where the issue in dispute is the balancing of the equities, a matter as to which district courts not only have particular expertise but also broad discretion."); G.S. ex rel. L.S. v. Fairfield Bd. of Educ., No. 16-cv-1355 (JCH), 2017 WL 2918916, at *13 (D. Conn. July 7, 2017); A.R. ex rel. F.P. v. N.Y.C. Dep't of Educ., No. 12-cv-4493 (PAC), 2013 WL 5312537, at *5 (S.D.N.Y. Sept. 23, 2013). The reduced deference reflects the fact that "the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief" when it comes to tuition reimbursement.

W.M., 783 F. Supp. 2d at 504 (quoting Gagliardo, 489 F.3d at 112). Still, before courts can exercise their broad powers to fashion relief, parents must demonstrate that the first two Burlington-Carter factors are in their favor. Gagliardo, 489 F.3d at 112; see also A.R., 2013 WL 5312537, at *5.

## DISCUSSION

### I.    Unopposed Recommendations

I have reviewed the unopposed portions of the R&R, and, finding no clear error, adopt those findings and recommendations pursuant to 28 U.S.C. § 636(b)(1).

### II.   Defendants' Objections

Defendants raise several objections in connection with Magistrate Judge Kuo's determination that the equities weigh in favor of reimbursement, including that: the R&R failed to apply the appropriate legal standard for the equities prong analysis, (Defs.' Objections 7-9, 13-14); the R&R failed to properly consider evidence that was in the record and relied on evidence that was not in the record, (id. at 11-12); and the R&R did not grant an appropriate level of deference to the SRO's and the IHO's equities determinations, (id. at 9-10). Underlying all of them is Defendants' concern that the R&R overly focused on their conduct when "the purpose of the equities prong . . . is to engage in an analysis of the parent's conduct." (Id. at 13.) Although I ultimately find that the R&R did not properly take into account Plaintiff's conduct in the denial of a FAPE, I reject Defendants' attempt to circumscribe the equities analysis to focus only on parental actions, without properly considering them in the context of the school's conduct.

### A. First Objection: Legal Standard Applied to the Equities Prong

The Defendants fault the R&R for "conflat[ing]" the third prong of the Burlington-Carter test with the first prong, (id. at 7), and as a result, argue the equities analysis erroneously "focused

entirely on the procedural and substantive deficiencies of the IEP—factors which are central to the first prong, not the equities prong," (id. at 8).

First, I disagree with Defendants' characterization of the R&R because the R&R explicitly considered Plaintiff's uncooperative conduct at length in its equities prong discussion. For example, the R&R comprehensively explained why Plaintiff's failure to consent to E.J.'s reevaluation was "not reasonable," (R&R 33):

> First, the record suggests [that] she agreed to the reevaluations, in writing, after the 2016 Appeal. Second, Plaintiff continued to refuse to consent to reevaluations despite the DOE's explanation that reevaluations were necessary. . . . Third, Plaintiff's refusal [of consent] is unsupported by the law, which allows for yearly reevaluations if the DOE determines they are necessary. 34 C.F.R. § 300.303(a)(1) . . . . The DOE made such a determination here.

(Id. (citations omitted)). To the extent that Defendants argue that a court cannot consider the conduct of schools or educational agencies in the weighing of equities, they are mistaken. The Supreme Court has made clear that "[c]ourts fashioning discretionary equitable relief under IDEA must consider all relevant factors." Carter, 510 U.S. at 16 (emphasis added).

Moreover, nothing in the statutory text nor the case law indicates that only parental actions are to be considered. In Forest Grove School District v. T.A., 557 U.S. 230 (2009), the Supreme Court rejected a school district's attempt to impose a restrictive interpretation of 20 U.S.C. § 1412(a)(10)(C) to limit a parent's ability to be reimbursed. The decision explicitly noted that "[t]he clauses of § 1412(a)(10)(C) are . . . best read as elucidative rather than exhaustive" as to what courts may consider in weighing the equities. Id. at 242. In T.K. v. New York City Department of Education, 810 F.3d 869 (2d Cir. 2016), the Second Circuit criticized the IHO and SRO for focusing only on the parents' "adversarial relationship" with school officials while "overlook[ing] the fact that the same officials shared responsibility for that relationship by ignoring or rebuffing the parents' repeated attempts 'to raise their concerns about bullying with teachers

8

and administrators.'" Id. at 879 (citation omitted). In other words, the Second Circuit relied on the school's conduct to determine whether the balance of equities was in the parents' favor.

Additionally, I reject Defendants' objection to the "substance" of the R&R's equities analysis because it relies on the already-discussed mischaracterization. Namely, Defendants claim that the R&R "excused" "Plaintiff's obstructive conduct . . . because [the] DOE is also purportedly at fault." (Defs.' Objections 13.) Although I disagree with the R&R's ultimate conclusion, the R&R does not imply that parental misconduct is negated in the equities analysis simply because the school was also at fault, and I reject the objection based on this premise.

However, there is merit to Defendants' related objection that the R&R "improperly relied" upon A. v. Greenwich Board of Education, No. 15-cv-203 (CSH), 2016 WL 3951052 (D. Conn. July 20, 2016), to find that Plaintiff's reimbursement should not be reduced. (Defs.' Objections 9 (discussing R&R 31-32).) The R&R pointed to the fact that A. held that the balance of equities favored the parents and, thus, the tuition reimbursement should not be reduced because "none of those acts or omissions [by the parents] actually obstructed the Board in meeting its obligations to provide a FAPE." 2016 WL 3951052, at *20. I agree with Defendants that the R&R's reliance on A. is misplaced because, here—and unlike in A.— "the parent's actions . . . clearly did obstruct DOE's efforts and significantly contributed to a denial of FAPE." (Defs.' Objections 9.) In fact, this goes to the crux of why I ultimately find that the tuition reimbursement should be reduced.

B. Second Objection: Improper Consideration of Evidence

Defendants additionally object to the R&R on the grounds that it did not consider evidence of Plaintiff's failure to cooperate with the DOE and overlooked evidence of the Summit School's noncooperation regarding the CSE meeting. (Id. at 11-12.) Relatedly, Defendants also assert that the R&R relied on evidence that was not in the record for its finding that the DOE ignored the

Summit School's clinical director's request to postpone the meeting. (Id. at 12.) None of these objections withstand scrutiny.

As discussed in the prior section, the claim that the R&R failed to consider evidence of Plaintiff's failure to cooperate is belied by its very text. (See, e.g., R&R 33.) As to the claim that the R&R overlooked evidence of the Summit School's noncooperation, the R&R explicitly noted that the parties "dispute[d] whether the Summit School had proper notice of or was invited to participate in the CSE meeting" and discussed Defendants' evidence on this issue. (Id. at 6.) The R&R described how the DOE school psychologist testified that she invited the Summit School to participate "through Outlook"—though no copy of the meeting invitation was provided in the record—and that "because the Summit School provided documents in advance of the CSE meeting, she believed the school had notice of the meeting." (Id.) The R&R acknowledged the evidence in Defendants' favor on this issue. But there was also strong evidence supporting Plaintiff's view—including that Summit School employees testified that they had not received any notice of the CSE meeting. (Id. at 23.) Contrary to Defendants' claim that the R&R overlooked Defendants' evidence, the R&R offered a thorough, well-reasoned explanation of why the evidence weighed in favor of finding there was no notice. (Id. at 23-24.) The rest of Defendants' objections regarding this issue devolve into their common refrain that the R&R should have focused more on Plaintiff's conduct, and this point has already been addressed and rejected.

Finally, Defendants' claim that the R&R relied on evidence outside of the record for its finding that the DOE ignored the Summit School's request to postpone the CSE meeting also fails. Granted, some of the citations that the R&R relies upon do not support this finding. However, the R&R clearly cites pages 335-36 of the Administrative Record, which includes the Summit School clinical director's testimony that she asked the DOE psychologist at the CSE meeting "[t]o notify

10

the parent that there would be a meeting, and have a meeting where the parent could be involved, and where our staff could be involved," (AR 335:19-22), and that while the DOE psychologist attempted to contact Plaintiff, the DOE psychologist was unable to do so and still chose to go forward with the meeting, (id. at 335:25-336:12). In other words, the Summit School clinical director testified that she asked for the meeting to be moved to a time when the parent and her staff could join, and the R&R cited this testimony. (R&R 24.) Therefore, Defendants' objection is meritless.

### C. Third Objection: The Appropriate Level of Deference

Defendants argue that the R&R did not apply the appropriate level of deference to the IHO's and the SRO's equities prong analysis, both of which came out against reimbursing tuition. (Defs.' Objections 9-10.) I partially agree with this objection.

I reiterate here that in reviewing a state agency's Burlington-Carter analysis, the equities prong does not warrant the same level of deference as the other two. See W.M., 783 F. Supp. 2d at 504; Rowley, 458 U.S. at 208. Nonetheless, in my view the R&R did not give adequate deference to the IHO's and the SRO's determination that Plaintiff's failure to consent to E.J.'s reevaluation obstructed Defendants' attempts to create an IEP. Not only do federal regulations give public agencies the discretion to determine when there is a need to conduct a reevaluation, see 34 C.F.R. § 300.303(a)(1), but Plaintiff and the DOE had entered into a written agreement for the DOE to fund and conduct a reevaluation following a prior New York State administrative review under the IDEA. (R&R 3, 33.) As discussed, the R&R noted that "[t]he SRO's conclusion that Plaintiff was uncooperative with the reevaluations is convincing and supported by the evidence." (Id. at 33.)

11

But the R&R also found that it was "the DOE's responsibility to ensure the presence of a properly constituted CSE, including a regular and special education teacher." (R&R 34 (citing 34 C.F.R. § 300.321(a)).) Further, the R&R ultimately determined that Defendants' misconduct was the cause of "the procedural and substantive inadequacies in E.J.'s IEP . . ." and that the inadequacies were "not the result of [Plaintiff's] uncooperativeness." (Id. at 35.) In reaching this conclusion, the R&R focused on how the SRO noted that some of his concerns about the IEP "might have [been] allayed . . . [by] the input of a regular education teacher" and that that absence contributed to his finding that the IEP was inadequate. (AR 34; R&R 34.) However, the R&R dismissed as mere speculation the SRO's determination "that if Plaintiff had 'more fully cooperated, especially with the reevaluation process, the CSE might have avoided some of the defects later found in the IEP.'" (R&R 35 (quoting AR 42).) I disagree with this characterization.

Contrary to the R&R's finding, the SRO properly determined that Plaintiff's failure to consent to reevaluations hindered Defendants' attempts to create an IEP. The district was entitled to request the reevaluation, and the record clearly shows it did so here in order to develop an IEP tailored to E.J.'s capabilities. (See, e.g., AR 782 (email from district to Plaintiff explaining that reevaluation was needed to help the IEP team assess E.J.'s current special education needs).) The district made multiple attempts to schedule a reevaluation in advance of the CSE, and Plaintiff's non-cooperation obstructed their efforts to comply with the statute and provide a FAPE. The SRO's conclusion that the CSE properly considered all the evaluative material it had available does not detract from his additional conclusion that Plaintiff's noncooperation deprived the CSE of additional, current evaluative materials that could have aided in forming an IEP. The SRO's

12

reasoned analysis of Plaintiff's refusal to give consent and how this noncooperation hindered the district's ability to provide a FAPE for E.J. is entitled to deference.

### III.     Tuition Reimbursement

After reviewing the R&R's equities prong analysis de novo, I have determined that it correctly highlighted failings in Defendants' conduct, but that it erred in its analysis of Plaintiff's conduct. As discussed, Congress has made it clear that tuition reimbursement "may be reduced or denied"—though it is not required to be—"upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii); see also A.D. v. Bd. of Educ., 690 F. Supp. 2d 193, 215 (S.D.N.Y. 2010) ("Statutory language in the IDEA specifically contemplates that a reimbursement award may be reduced or denied if the parents, inter alia, . . . fail to make their child available for an evaluation[] or otherwise act unreasonably."). Here, I find that Plaintiff was "unreasonable" in failing to make E.J. available for reevaluation and, thus, the equities do not favor full tuition reimbursement. However, the Supreme Court instructs that "[c]ourts fashioning discretionary equitable relief under IDEA must consider all relevant factors." Carter, 510 U.S. at 16. In considering "all relevant factors," I must take into account that Defendants failed to properly notify the Summit School of the CSE meeting, and that they proceeded to create and implement an IEP without the statutorily required teachers present.

Therefore, I deem partial reimbursement appropriate here. In reaching this conclusion, I find J.S. v. Scarsdale Union Free School District, 826 F. Supp. 2d 635 (S.D.N.Y. 2011), illustrative. In J.S., the court found that equitable considerations warranted reducing the tuition reimbursement by 75% because the parents had engaged in several examples of conduct that hindered the development of a FAPE. Id. at 676. Among them, the parents had refused to bring

their child to interviews at the Summit School—the private school option selected by the district—
"even though they were told multiple times that an interview was necessary before the placement
process could continue, [which] arguably 'obstructed the [district's] placement process.'" Id. at
674 (second alteration in original) (quoting N.R. ex rel. T.R. v. Dep't of Educ., No. 07-cv-9648
(BSJ), 2009 WL 874061, at *7 (S.D.N.Y. Mar. 31, 2009)). This conduct is analogous to Plaintiff's
refusal to consent to E.J.'s reevaluation. But the parents in J.S. erred in other ways, as well,
including by "not provid[ing] the District with any notice whatsoever before withdrawing [the
student] from [the public school]," id. at 671, and by waiting two months to reject the district's
proposed Summit School placement, even though they had already committed their child to a
different private placement six months earlier, id. at 673. Based on the myriad ways the parents
disrupted the development of a FAPE for their child, the court determined a 75% reduction was
appropriate. Id. at 676.

 Here, Plaintiff's uncooperative conduct did not rise to the same level as that of the parents
in J.S. and did not play as big of a role in hindering the development of an appropriate IEP for E.J.
As such, I find that the appropriate reduction in tuition reimbursement here is a more moderate
50%. E.J.'s tuition for the Summit School for the 2017-2018 school year was $34,088. (R&R 9.)
Therefore, Defendants will reimburse Plaintiff $17,044.

## CONCLUSION

 For the reasons stated above, I adopt the majority of the findings and conclusions of the
R&R, except the portion which determined that the SRO's decision to deny tuition on equitable
grounds was entitled to no deference. Instead, I find that, after balancing the equities, Plaintiff is
entitled to 50% of the requested tuition reimbursement. Accordingly, Plaintiff's motion is granted
in part and denied in part, and Defendants' motion is granted in part and denied in part, with the

effect that Plaintiff shall receive 50% reimbursement for E.J.'s tuition at the Summit School for

the 2017-2018 school year.

SO ORDERED.

Dated: September 27, 2022
      Brooklyn, New York

                s/Carol Bagley Amon

                Carol Bagley Amon
                United States District Judge

15